**LEWIS BRISBOIS BISGAARD & SMITH LLP**
DANIEL C. DECARLO, SB# 160307
 E-Mail: Dan.DeCarlo@lewisbrisbois.com
GRIFFEN J. THORNE, SB# 306152
 E-Mail: Griffen.Thorne@lewisbrisbois.com
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for KNEE DEEP BREWING COMPANY, a Nevada limited liability company

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SONY PICTURES TELEVISION INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>KNEE DEEP BREWING COMPANY, a Nevada limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendant. | CASE NO. 2:18-cv-03221-PA-FFM<br><br>**DEFENDANT KNEE DEEP BREWING COMPANY'S ANSWER AND AFFIRMATIVE DEFENSES**<br><br>**JURY TRIAL REQUESTED**<br><br>The Hon. Percy Anderson<br><br>Trial Date:    None Set |

Defendant Knee Deep Brewing Company ("Defendant"), by and through its undersigned attorneys, answers the allegations in Sony Pictures Television, Inc.'s ("Plaintiff") Complaint, and asserts affirmative defenses, as follows:

## NATURE OF ACTION

1. This is an action for trademark infringement, false designation of origin, trademark dilution and unfair competition under the Lanham Trademark Act of 1946, 15 U.S.C. §§ 1114(1), 1125(a) and (c), and California state law.

**ANSWER**: Defendant admits that Plaintiff has asserted the claims alleged and seek the relief mentioned in the foregoing paragraph 1.

## PARTIES

2. Plaintiff Sony Pictures Television Inc. ("SPT") is a Delaware corporation with its principal place of business at 10202 W. Washington Blvd., Culver City, California 90232.

**ANSWER**: Defendant is without knowledge sufficient to admit or deny the allegations in this paragraph 2, and on that basis denies the allegations.

3. Upon information and belief, Defendant Knee Deep Brewing Company ("Knee Deep") is a Nevada limited liability company with its principal place of business at 13395 New Airport Road, Suite H, Auburn, California 95602.

**ANSWER**: Defendant admits the allegations of this paragraph 3.

4. The true names and capacities of the defendants sued herein as DOE Defendants 1 through 10, inclusive, are currently unknown to SPT, which therefore sues such defendants by fictitious names. Each of the defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. SPT will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE defendants when such identities become known. Knee Deep and DOE Defendants 1 through 10, inclusive, are referred to collectively herein as "Defendants."

**ANSWER**: Defendant is without knowledge sufficient to admit or deny the allegations in this paragraph 4, and on that basis denies the allegations.

## JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction over the federal trademark claims arising under the Lanham Trademark Act of 1946, as amended, 15 U.S.C. § 1051 et seq., pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331 and 1338. The Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367.

**ANSWER**: Defendant admits the allegations of this paragraph 5.

6. Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred here and Knee Deep has sufficient contacts with this District, including through the sale of the infringing products at issue in this case in this District, such as to be deemed to be subject to personal jurisdiction here and thus to reside here for venue purposes.

**ANSWER**: Defendant denies that it has sold infringing product, but otherwise admits the allegations in this paragraph 6.

## FACTS COMMON TO ALL CLAIMS

### SPT and its BREAKING BAD Marks

7. SPT is a world renowned entertainment company. Its global operations encompass production, acquisition and distribution of television programs; television networks; digital content creation and distribution; and development of new entertainment products, services and technologies.

**ANSWER**: Defendant is without knowledge sufficient to admit or deny the allegations in this paragraph 7, and on that basis denies the allegations.

8. SPT produces and has produced many high-profile widely viewed television shows, including the renowned, Emmy Award winning television series BREAKING BAD, which premiered on the AMC television network in January 2008. The show tells the fictional story of Walter White, a high school chemistry teacher in Albuquerque, New Mexico who, having been diagnosed with terminal lung cancer, turns to a life of crime in partnership with his former student, manufacturing and selling crystal meth in order to provide for his wife and children after his death.

**ANSWER**: Defendant is without knowledge sufficient to admit or deny the allegations in this paragraph 8 and on that basis denies the allegations.

9. BREAKING BAD became one of the most watched cable shows on American television, has been ranked by the *Guinness World Records* as the most

1 critically acclaimed show of all time and has been cited as one of the greatest
2 television series in history. The show has won 16 Primetime Emmy Awards,
3 including the Primetime Emmy Award for Outstanding Drama Series in both 2013
4 and 2014. Bryan Cranston also won the Primetime Emmy Award for Outstanding
5 Actor in a Drama Series on four separate occasions for his portrayal of Walter White.
6 The show remains available today via Netflix media streaming and DVD rental
7 service, the AMC television channel's website amc.com, and by download for rental
8 or purchase from the iTunes Store, Google Play, Xbox, and Amazon. The whole
9 series or individual seasons are available for purchase on DVD everywhere that
10 DVDs are sold, including Amazon.com.

11 **ANSWER**: Defendant is without knowledge sufficient to admit or deny the
12 allegations in this paragraph 9, and on that basis denies the allegations.

13     10. As a result of the great success enjoyed by SPT's BREAKING BAD
14 show, the BREAKING BAD word mark and various indicia associated with the
15 show, including the BREAKING BAD logo shown below (collectively, "the
16 BREAKING BAD Marks"), have become widely and immediately recognizable to
17 consumers as identifying SPT's entertainment property and goods and services
18 connected with such property:



27 The BREAKING BAD logo presents the words in white lettering, with the first two
28 letters of each word ("Br" and "Ba") framed inside of a green square with white

LEWIS BRISBOIS BISGAARD & SMITH LLP ATTORNEYS AT LAW

outlining and small white numbers set off in the corners so as to represent the symbols for the chemical elements bromine and barium from the periodic table of chemical elements.

**ANSWER**: Defendant is without knowledge sufficient to admit or deny the allegations in this paragraph 10, and on that basis denies the allegations.

11. SPT owns a federal trademark registration for the BREAKING BAD word mark (Reg. No. 3,718,597) for entertainment services in the nature of an ongoing dramatic television series and DVDs featuring dramatic television programming. Such registration is valid, subsisting and in full force and effect and has become incontestable.

**ANSWER**: Defendant admits the allegations in this paragraph 11.

12. In order to further capitalize on the enormous popularity of the BREAKING BAD show, SPT has established an extensive licensing program commercializing various products and services based on the show. SPT sells a wide variety of officially licensed merchandise in connection with the BREAKING BAD Marks at the official BREAKING BAD store located at breakingbadstore.com in addition to other retail sources, including such diverse goods as apparel, glassware, travel cups, mugs, posters, costumes, wallets, keychains, ashtrays, coasters, figurines and action figures, bottle openers, throw pillows, postcards and vodka, to name just some examples of goods sold throughout the United States. SPT has also actively pursued exploiting its BREAKING BAD Marks in the food & beverage category, including the already officially licensed HEISENBERG BLUE Ice Vodka, which uses the pseudonym adopted and used in the show by the fictional lead character Walter White in connection with his clandestine sale of blue colored crystal meth.

**ANSWER**: Defendant is without knowledge sufficient to admit or deny the allegations in this paragraph 12, and on that basis denies the allegations.

13. The right to associate one's business with the BREAKING BAD Marks

and accompanying reputation and goodwill associated therewith is extremely valuable. Indeed, companies pay substantial licensing fees for such rights in order to promote and identify their businesses, products and services with the BREAKING BAD Marks and show.

**ANSWER**: Defendant is without knowledge sufficient to admit or deny the allegations in this paragraph 13, and on that basis denies the allegations.

14. As a result of the widespread fame and success of the BREAKING BAD show and SPT's related licensing program, SPT has built up tremendously valuable goodwill in the BREAKING BAD Marks, including the BREAKING BAD logo, as marks symbolizing SPT, its famous BREAKING BAD hit television show and official merchandise associated with the show.

**ANSWER**: Defendant is without knowledge sufficient to admit or deny the allegations in this paragraph 14, and on that basis denies the allegations.

**Knee Deep's Infringing BREAKING BUD Beer**

15. Upon information and belief, Defendant Knee Deep is a manufacturer of beer, ales, porters and stouts.

**ANSWER**: Defendant admits the allegations in this paragraph 15.

16. Upon information and belief, beginning in 2015, long after SPT established its valuable trademark rights in its BREAKING BAD Marks, Defendants began selling beer under the name BREAKING BUD.

**ANSWER**: Defendant admits that, beginning in 2015, it began selling beer under the name BREAKING BUD. Defendant denies the remaining allegations in this paragraph 16.

17. In an obvious effort to trade on the fame and recognition of the BREAKING BAD Marks and associate itself with the tremendous success of SPT's famous television show, Defendants deliberately imitated the BREAKING BAD logo and marketed their product by incorporating other design elements clearly meant to evoke SPT's legendary show.

**ANSWER**: Defendant denies the allegations in this paragraph 17.

18. As shown in the image below, the label for Knee Deep's beer presents the BREAKING BUD mark in virtually the identical format as SPT's BREAKING BAD logo:



Thus, just as in the BREAKING BAD logo, Knee Deep's BREAKING BUD mark is presented in white lettering with the first two letters of each word ("Br" and "Bu") set off inside a green box outlined in white with small white numerals in a corner, so as to give the appearance of chemical symbols from the periodic table of elements.

**ANSWER**: Defendant admits that its Breaking Bud beer's log contains white lettering with the first two letters of each word ("Br" and "Bu") set off inside a green box outlined in white with small white numerals in a corner. Defendant denies the remaining allegations in this paragraph 18.

19. In addition, the label and related marketing materials feature a character wearing a hazmat suit appearing against a desert background (such as the Albuquerque setting of SPT's BREAKING BAD show) incorporating the image of an RV (the type of vehicle used by the fictional characters in BREAKING BAD to cook the crystal meth they sold). The unmistakable intent and effect of Defendants' marketing strategy is to trade off the renown and recognition of SPT's BREAKING BAD brand by adopting design features that will be immediately identified and

1  associated by the public with SPT's television show.

2  **ANSWER**: Defendant admits that its Breaking Bud beer's label contains a
3  character wearing a hazmat suit appearing against a desert background. Defendant
4  denies the remaining allegations in this paragraph 19.

5  20. There is no legitimate need for Defendants to connect their beer with
6  SPT's BREAKING BAD show. The use of the BREAKING BUD name, the
7  appropriation of the BREAKING BAD logo design and incorporation of other
8  design features evocative of SPT's show are entirely gratuitous and undertaken
9  solely to benefit from the enormous goodwill and immediate recognition of SPT's
10 famous BREAKING BAD marks and thereby avoid the difficult effort of creating
11 Defendants' own unique and recognizable brand image. Simply put, rather than
12 investing the time, effort and resources necessary to establish their own reputation
13 and identity, Defendants have instead opted to hijack the famous brand identity
14 associated with SPT and its BREAKING BAD show for Defendants' own intended
15 benefit.

16 **ANSWER**: Defendant denies the allegations in this paragraph 20.

17 21. Defendants' unauthorized use of SPT's trademarks and design elements
18 threatens to erode the value of SPT's BREAKING BAD Marks by undermining
19 SPT's continuing ability to attract licensees for such marks and secure compensation
20 for the right to associate one's products with the BREAKING BAD show. In
21 addition, SPT's ability to protect the value and integrity of the BREAKING BAD
22 Marks would be put at severe risk if companies were able to use such marks without
23 subjecting themselves to the standards of quality control exercised by SPT in
24 connection with the use and licensing of such marks.

25 **ANSWER**: Defendant denies the allegations in this paragraph 21.

26 22. Defendants' use of the BREAKING BUD mark, together with their
27 copying of the BREAKING BAD logo design and other themes, indicia and
28 imagery associated with SPT's BREAKING BAD show, is likely to cause

1 confusion, mistake or deception as to the source and origin of Defendants' products, 2 and is likely to cause consumers to draw the false impression that Defendants' 3 goods are associated with, or authorized, endorsed or sponsored by SPT as the 4 producer of the BREAKING BAD show and owner of the BREAKING BAD 5 Marks.

6 **ANSWER**: Defendant denies the allegations in this paragraph 22.

7 23. Defendants have performed the aforementioned acts without SPT's 8 permission or authority.

9 **ANSWER**: Defendant denies the allegations in this paragraph 23.

10 24. Upon information and belief, unless and until Defendants are enjoined 11 from any further unauthorized exploitation of the BREAKING BAD Marks, they 12 will continue to use their infringing designations in violation of SPT's rights. 13 Although SPT has sought to halt Knee Deep's infringing conduct, Knee Deep has 14 refused to cease using marks and indicia exclusively associated with SPT's 15 BREAKING BAD show.

16 **ANSWER**: Defendant denies the allegations in this paragraph 24.

17 25. Upon information and belief, by virtue of their unlawful conduct, 18 Defendants have made or will make substantial profits and gains to which they are 19 not in law or equity entitled.

20 **ANSWER**: Defendant denies the allegations in this paragraph 25.

21 26. Upon information and belief, Defendants' actions have been willful, 22 wanton, reckless and in total disregard of SPT's valuable trademark rights.

23 **ANSWER**: Defendant denies the allegations in this paragraph 26.

24 27. As a result of Defendants' unlawful actions, SPT has been or will be 25 damaged and has suffered, and will continue to suffer, immediate and irreparable 26 injury for which SPT has no adequate remedy at law.

27 **ANSWER**: Defendant denies the allegations in this paragraph 27.

28

LEWIS BRISBOIS BISGAARD & SMITH LLP ATTORNEYS AT LAW

## FIRST CLAIM FOR RELIEF

### (Infringement of Registered Mark, Lanham Act § 32(1))

28. SPT repeats and realleges the allegations set forth in paragraphs 1-27 above with the same force and effect as if set forth fully herein.

**ANSWER**: Defendant incorporates, as if fully set forth herein, its answers to the allegations contained in the foregoing paragraphs of this Complaint.

29. Defendants' conduct as described above constitutes infringement of SPT's federally registered BREAKING BAD mark in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

**ANSWER**: Defendant denies the allegations in this paragraph 29.

## SECOND CLAIM FOR RELIEF

### (False Designation of Origin, Lanham Act § 43(a))

30. SPT repeats and realleges the allegations set forth in paragraphs 1-29 above with the same force and effect as if set forth fully herein.

**ANSWER**: Defendant incorporates, as if fully set forth herein, its answers to the allegations contained in the foregoing paragraphs of this Complaint.

31. Defendants' conduct as described above constitutes the use in commerce of false designations of origin, and false or misleading descriptions of fact or false and misleading representations of fact in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

**ANSWER**: Defendant denies the allegations in this paragraph 31.

## THIRD CLAIM FOR RELIEF

### (Federal Dilution, Lanham Act § 43(c))

32. SPT repeats and realleges the allegations set forth in paragraphs 1-31 above with the same force and effect as if set forth fully herein.

**ANSWER**: Defendant incorporates, as if fully set forth herein, its answers to the allegations contained in the foregoing paragraphs of this Complaint.

33. SPT's BREAKING BAD Marks, including the BREAKING BAD

1 word mark and logo, are distinctive and famous and have enjoyed such
2 distinctiveness and fame since long prior to any sale by Defendants of the infringing
3 BREAKING BUD product at issue in this case.

**ANSWER**: Defendant denies the allegations in this paragraph 33.

34. Defendants' conduct as described above is likely to cause dilution of the distinctive quality of SPT's famous BREAKING BAD Marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

**ANSWER**: Defendant denies the allegations in this paragraph 34.

### FOURTH CLAIM FOR RELIEF
### (Common Law Trademark Infringement and Unfair Competition)

35. SPT repeats and realleges the allegations set forth in paragraphs 1-34 above with the same force and effect as if set forth fully herein.

**ANSWER**: Defendant incorporates, as if fully set forth herein, its answers to the allegations contained in the foregoing paragraphs of this Complaint.

36. Defendants' conduct as described above constitutes trademark infringement and unfair competition under the common law of the State of California.

**ANSWER**: Defendant denies the allegations in this paragraph 36.

### FIFTH CLAIM FOR RELIEF
### (California Bus. & Prof. Code § 14330)

37. SPT repeats and realleges the allegations set forth in paragraphs 1-36 above with the same force and effect as if set forth fully herein.

**ANSWER**: Defendant incorporates, as if fully set forth herein, its answers to the allegations contained in the foregoing paragraphs of this Complaint.

38. Defendants' conduct as described above is likely to cause injury to the business of SPT and/or dilute the distinctive quality of SPT's BREAKING BAD Marks.

**ANSWER**: Defendant denies the allegations in this paragraph 38.

## SIXTH CLAIM FOR RELIEF

### (California Bus. & Prof. Code § 17200)

39. SPT repeats and realleges the allegations set forth in paragraphs 1-38 above with the same force and effect as if set forth fully herein.

**ANSWER**: Defendant incorporates, as if fully set forth herein, its answers to the allegations contained in the foregoing paragraphs of this Complaint.

40. Defendants' conduct as described above constitutes unfair competition within the meaning of Cal. Bus. & Prof. Code § 17200, *et seq.*

**ANSWER**: Defendant denies the allegations in this paragraph 40.

### PRAYER FOR RELIEF

Defendant denies that Plaintiff is or will be entitled to any of the relief sought in its Complaint, monetary, equitable, or otherwise.

### JURY TRIAL REQUEST

Defendant requests a trial by jury on all claims and defenses so triable.

DATED: July 27, 2018     LEWIS BRISBOIS BISGAARD & SMITH LLP

By: /s/ Daniel C.DeCarlo
Daniel C. DeCarlo
Attorneys for KNEE DEEP BREWING COMPANY, a Nevada limited liability company

# AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

### (Laches)

1. Shortly after Defendant began to market its Breaking Bud beer, it was contacted by representatives of Plaintiff in writing in July 2015. Defendant was told in this written communication that "It seems the Knee Deep team are big fans of 'Breaking Bad' and we really appreciate the call out to our very popular show." In a follow-up conversation between a representative of Plaintiff and Defendant, the potential value of a formal relationship between Plaintiff and Defendant was discussed but at no time in that conversation did Plaintiff suggest that if the parties did not enter into a formal relationship, Plaintiff would bring a claim against Defendant. The discussion simply focused on whether a formal relationship would be of value to both parties. Ultimately, for a variety of business reasons, Plaintiff decided not to enter into a formal relationship with Plaintiff.

2. That was the last Defendant heard from Plaintiff for **more than two years**, until Defendant received a cease-and-desist letter on or about August 15, 2017. It was in that letter, more than two years after the initial discussions, Defendant was advised by Plaintiff that Plaintiff viewed Defendant's activities vis-à-vis the sale of Breaking Bud as a violation of Plaintiff's rights. Defendant had no reason to believe or understand that in 2015 when Breaking Bud was first launched, Plaintiff would take legal action to enforce its now alleged rights against Defendant. During the interim two-plus years between Plaintiff's initial contact with Defendant in July 2015 and its cease-and-desist letter of August 15, 2017, Defendant continued to manufacture and invest significant sums in the advertising and promotion of its Breaking Bud beer, having no clue that doing so would incite the ire of Plaintiff two years later. Based on Defendant's significant expenditures, the Breaking Bud beer became Defendant's best-selling product. In other words, Defendant relied to its serious detriment on Plaintiff's statements, inaction, and lack of communication of

its current position by investing significant resources into what has since become its flagship brand.

3. Had Plaintiff clearly communicated its position at the inception of Defendant's launch in 2015 or in the initial communications with Defendant—and even if Defendant did not agree with Plaintiff's view of its rights—Defendant could still have chosen to capitulate to Plaintiff's demands so as to avoid a costly fight with a far better funded adversary. Capitulating to such demands in 2015 (if such demands had been made) would have come with minimal costs and disruption because the Breaking Bud product was in its infancy and had not developed any significant goodwill at that time. Even if Defendant did not capitulate in 2015, Plaintiff could have then taken legal action which would have meant that Defendant would not have invested time and money developing what is today its flagship brand. Defendant could also have chosen, had Plaintiff communicated its current position in 2015, the course of filing its own declaratory relief action, again prior to investing heavily in the development of the Breaking Bud product.

4. In contrast, abandoning Breaking Bud today would come with **massive** costs and injury to Defendant. Plaintiff's delay, actions, and inactions (which include luring Defendant into its actions as outlined herein by failing to communicate its claims until August 2017 when Plaintiff had every opportunity to provide such notice in 2015), have caused Defendant to take the actions outlined above.

5. This is a textbook case of laches. Plaintiff's claims are barred by the equitable doctrine of laches because of its delay in taking action against Defendant.

## SECOND AFFIRMATIVE DEFENSE
### (Estoppel)

6. Defendant incorporates the information contained in the First Affirmative Defense. As noted in detail above, Defendant was not aware that Plaintiff objected to its sale of the Breaking Bud beer at any time until 2017. Based

on Plaintiff's two-year silence after initially offering a formal relationship that Defendant chose not to pursue, Defendant reasonably believed that Plaintiff was not claiming that any of its rights were being violated and relied on such to its detriment as Plaintiff is now claiming the Defendant is violating its rights. Due to this reliance, Defendant would be materially prejudiced if Plaintiff is allowed to proceed with its claims.

### THIRD AFFIRMATIVE DEFENSE
### (Waiver/Acquiescence)

7. Defendant incorporates the information contained in its prior Affirmative Defenses. To the extent that Defendant engaged in any misconduct, Plaintiff acquiesced for over two years and has thus waived its right to pursue any claims.

### FOURTH AFFIRMATIVE DEFENSE
### (Consent)

8. Defendant incorporates the information contained in its prior Affirmative Defenses. Plaintiff consented to Defendant's alleged misconduct for years and thus is barred by the equitable doctrine of consent from pursuing its claims.

### FIFTH AFFIRMATIVE DEFENSE
### (License)

9. Defendant incorporates the information contained in its prior Affirmative Defenses. Defendant has not engaged in any misconduct because it had an implied license to use Plaintiff's intellectual property by virtue of the conduct referred to herein. In sum, Plaintiff impliedly gave its permission for the actions that Defendants now claim to be wrongful. In its initial communication with Defendant, Plaintiff expressly and impliedly lauded such conduct by stating in part, "It seems the Knee Deep team are big fans of 'Breaking Bad' and we really appreciate the call out to our very popular show." Plaintiff's conduct as outlined

here, both expressly and implicitly provided Defendant with permission and license to engage in the activity now being complained of by Plaintiff as being wrongful.

## SIXTH AFFIRMATIVE DEFENSE
### (Fair Use/Parody)

10. Defendant incorporates the information contained in its prior Affirmative Defenses. Defendant's Breaking Bud beer is a parody of Plaintiff's purported intellectual property and is thus protectable under the doctrines of fair use and/or parody. The Breaking Bud beer is a humorous spin on the Breaking Bad television show which simply pokes fun at the show. The Breaking Bud beer was neither intended to, nor on information and belief does cause any likelihood of confusion with or likelihood of false association with Plaintiff or Plaintiff's purported intellectual property. On information and belief, no reasonable consumer would believe that the parties or their products were affiliated and the relevant consumer readily appreciates that Defendant's Breaking Bud label and product is a joke.

11. In fact, as has already been squarely confirmed by those who have come to learn about this lawsuit, Defendant's Breaking Bud beer is plainly viewed by the relevant consuming public (which are necessarily Defendant's customers) as a joke and parody. For example:

- "C'mon @sony, parody is parody - you know that." https://twitter.com/Bubba_D61/status/987474313941954560

- "SONY is really trying to sue a small town brewery for trademark infringement? Sorry but 'breaking bud' IPA is a great marketing tool, it's not like Breaking Bad failed as a show, it's binged watched. They should give @KneeDeepBrewing a nice thank you!" https://twitter.com/courtneychester/status/986993873317605376

12. As a leading trademark commentator has noted, "the ordinary consumer will see that this is a joke. She will appreciate that an entity separate and

distinct from the trademark owner is poking fun at a trademark or the policies of its owner. Because it is a successful parody, the ordinary observer sees that the defendant is not connected in any way with the owner of the target trademark." *McCarthy On Trademarks* § 31:153. The relevant consuming public does not think that Defendant is associated with Plaintiff, or that Breaking Bud is associated with Breaking Bad. The beer label is a joke—it is a parody, plain and simple

## SEVENTH AFFIRMATIVE DEFENSE

### (First Amendment)

13. Defendant incorporates the information contained in its prior Affirmative Defenses. Defendant's conduct constitutes a parody and fair use that is protected by the First Amendment.

DATED: July 27, 2018            LEWIS BRISBOIS BISGAARD & SMITH LLP


By: /s/ Daniel C. DeCarlo
Daniel C. DeCarlo
Attorneys for KNEE DEEP BREWING COMPANY, a Nevada limited liability company